Good morning, Your Honors. May it please the Court, I'm Todd Rangstad, I'm here representing Hamilton Materials today. I would like to reserve about five minutes for rebuttal, so I'll try and keep an eye on the clock. In January 2005, Judge Cooper faced a very difficult situation. Hamilton Materials had sued Union Carbide and others for, among other things, fraud, alleging that it had been misled for decades by Union Carbide about the dangers of Union Carbide's special form of asbestos. Union Carbide sued in State court. The defendants removed the action, and Hamilton Materials brought a motion to remand. At the same time, in response to that motion, Union Carbide brought a motion to dismiss. At the hearing, counsel for Union Carbide brought in a declaration with 130 pages of documents. And counsel argued that, in this case, all defendants should be dismissed and the motion dismissed on the grounds of the statute of limitations. What he argued was there was such common knowledge of the dangers of asbestos that Hamilton Materials was on inquiry notice that the claims of Union Carbide might, in fact, be wrong. Now, Judge Cooper at that hearing had a tentative to grant the motion for remand and to deny Union Carbide's motion to dismiss. But she clearly was facing a very difficult situation. A month later, a month after that hearing, this Court decided that the very same issue raised in the context of tobacco, whether common knowledge of a dangerous product was sufficient to cause the running of the statute of limitations. This Court decided that California law on that subject was so unclear that rather than decide the case before it, it sent that case to the California Supreme Court. That was the Grisham case that we're all familiar with. So Judge Cooper was faced with deciding this without the benefit of a clear state of the law. And faced with this difficult decision, Judge Cooper reversed herself, decided instead of the tentative that she would convert the motion into a motion for summary judgment, the motion to dismiss, she would deny the motion to remand on the ground that the other defendants had been fraudulently joined because the statute of limitations had run. And in her decision, what she said is, to test his inquiry notice, if there was common knowledge of the dangers of asbestos, if there was a scientific dispute over whether or not union carbide's form of asbestos was dangerous, then Hamilton Materials was on inquiry notice that it should have investigated and therefore dismissed the case. Interesting development since we now have the benefit of the Grisham opinion from the California Supreme Court. And the Grisham opinion, I think, makes things a lot clearer. First the first thing that Grisham does is it clarifies, I believe, that there are two standards that we're talking about here. The first standard is the discovery rule. Under the discovery rules, the question is whether there was a reasonable suspicion, whether the plaintiff had reason to suspect. That's the inquiry notice rule. And the discovery rule applies in all statute of limitations and in all situations. The cause of action doesn't accrue until you have reason to believe that that cause of action exists. That's not what Hamilton Materials was alleging in this case. What Hamilton Materials was alleging was that union carbide had fraudulently concealed the facts concerning their own misrepresentations, and that's what caused the delay in the running of the statute of limitations. Judge Cooper was clearly confused by these two standards. And in her opinion, even as she talks about fraudulent conveyance, I mean, fraudulent concealment, she mentions inquiry notice. Hamilton was on inquiry notice. But the Grisham opinion makes it clear that inquiry notice only applies to the discovery rule. When you get to fraudulent concealment, it's a very different rule. What the Grisham court said about fraudulent concealment is as follows. A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as plaintiff's reliance on the misrepresentations is reasonable. We cannot generalize about the precise point in time when reliance on the tobacco company's misrepresentations became unreasonable. Whether reliance is reasonable is a question of fact for the jury and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion. Where it is claimed that common knowledge undermines a plaintiff's claimed reasonable reliance on misinformation, a factfinder should examine the extent of common knowledge in comparison to the alleged convincingness of the misrepresentation. We, therefore, reject Solomon to the extent that it holds that there is a special presumption under California law based on common knowledge that a plaintiff is aware that smoking is addictive or harmful. So the test here is not inquiry notice. The test here is at what point in time did Hamilton Materials' reliance upon the misrepresentations of Union Carbide become unreasonable? It's a question of fact. When is the first time that Hamilton was sued with Union Carbide? I believe it was in the 80s, Your Honor. In the 80s. That's correct. At that point, you had actual notice that there was some, at least some, scientific opinion which says even this stuff is bad. Your Honor, what there was was a scientific debate at the time. And there was good opinion by some scientists that even this calide, or however you pronounce it, how do you pronounce it? Calibria, Your Honor. All right. Even that is bad stuff and causes all kinds of problems, right? That's correct. So in the 80s, you had notice that there was some — pardon me. There was some scientific opinion which says this is going to cause problems we ought to look into. What there was was a great deal of uncertainty in the science at that point in time, Your Honor. And even the EPA regulations that banned all forms of asbestos in 1989, they recognized the fact that there was a very strong course of opinion from scientists that chrysotile in general was less harmful and perhaps not harmful at all. The EPA did not purport to resolve that issue. The EPA said we're going to err on this side of caution and ban all forms of asbestos. Here's — and here's the point, Your Honor. Bless you. Go ahead. The — a party should be entitled to pick a side in a scientific debate and rely upon its own experts and its own scientists who are testifying in courts of law that Calibria is unsafe. That doesn't put us on notice that Union Carbide was, in fact, in possession of materials. Bless you, Your Honor. That was, in fact, in possession of materials that showed that Calibria was, in fact, harmful and withheld those from us. And not just that they withheld those from us, that they told us the opposite, that they told us continually that Calibria is different than other forms of asbestos. And let me just explain for just a moment the science behind this. Several forms of asbestos, chrysotilite, amosite, tremolite, are long fiber forms of asbestos. Everyone acknowledges that those are extremely harmful. They can cause lung cancer. They can cause mesothelioma, a very dangerous cancer, almost always fatal. It's a cancer of the lining of the lungs. Chrysotile is something different. Chrysotile is a short-form fiber — short-form fiber. Most chrysotile, in fact, all other forms of chrysotile are contaminated with something called tremolite, which, again, is a rather dangerous form of asbestos. But studies have shown that chrysotile passes through the lungs more quickly, sometimes in a matter of days or weeks, than does the dangerous forms, chrysotilite, amosite, et cetera. Union carbide said to us, Calibria is different. Calibria is different even than other chrysotile forms of asbestos. In fact, it is unique in the world. It comes from a mine in which the Calibria asbestos is a pure form of chrysotile that is not contaminated with tremolite. It's the only mine in the world where that is the case. And, in fact, these fibers pass through the lungs in a matter of hours. The evidence, by the way, there's still evidence supporting their — their statements in that regard. There's a cite to a study that's in the — in the record of volume six, page 1400. It's a study by Dr. David Bernstein, a Ph.D., who performed the study in June 2003. His conclusive, concluding words are, as Calibria chrysotile has been certified to have no tremolite fibers, the results of the current study, together with the results from epidemiological studies, indicate that this fiber is not associated with lung disease. Now, is Hamilton Materials entitled to rely upon a direct explanation of that regard? Kennedy. When is the first time Hamilton lost a case with union carbide? Carvin. Your Honor, there is no evidence in the record that Hamilton Materials has ever lost a case. That evidence has not been presented. And the important point, I think, that you may be alluding to, there are issues here for a jury to decide. There are issues with respect to statute of limitations for a jury to decide. But that evidence is supposed to be presented to a jury. It is supposed to be presented to a finder of fact. As the Court said in Grisham, unless reasonable minds cannot disagree, this is a question of fact for the jury. Now, that's the standard. And that's unfortunately not the standard that Judge Cooper utilized in reaching her decision. Let me turn for a moment, Your Honor, to the procedural status. Yes, Your Honor. Does the record show when your client made settlements of asbestos claims involving No, it does not, Your Honor. There's no evidence of that in the record. The procedural status here, I think, is important. What the Court had to deal with first, the Court below, is whether or not there was fraudulent joinder. And the Court had to find fraudulent joinder in order to deny a motion to remand and thereby deal with Unicarbide's motion to dismiss. If the statute had run, then there's no problem. I'm sorry? And if the statute had run, there's no problem. That's correct. But here's the test. Here's the test on fraudulent joinder. The burden on defendants to justify removal is a heavy one. A defendant will be deemed fraudulently joined only if, after all disputed questions of fact, and all ambiguities of the controlling State law are resolved in plaintiff's favor, plaintiff could not recover against the nondiverse party. That's the standard. That's right out of Casey Acy's brief, okay? Well, in this case, that's not what happened. The Court resolved the disputed issues of law without submitting it to a jury and resolved them in defendants' favor.  Without that, we don't even get to the question. If there is just an issue of fact here, this case must be remanded. And, in fact, the court below must at that point remand the case to the State court for determination of that issue of fact. And it can't be said on this issue or on this record that reasonable minds could not disagree. It can't fairly be said that. Hamilton Materials was relying on science, and it was relying for decades on the misrepresentations of leaning carbide. Now, those allegations are in Hamilton Materials' complaint, and there was no evidence submitted, no competent evidence that would offset any of that, those allegations in the complaint. Those allegations are deemed binding for these purposes. What we had was a lot of evidence submitted that there was a lot of public knowledge of the dangers of asbestos. But that doesn't counteract the fraud that occurred here. That doesn't counteract the decades of Union Carbide withholding information regarding the dangers of Calydrian asbestos and telling us that, in fact, Calydrian was safe. It doesn't change that situation. Your Honors, I'm at my 5-minute mark, so I think I'll reserve the remainder of the time. Thank you. Bix, I'm from Warwick-Harrington. I'm here for Union Carbide. We have allotted among our group over here 15 minutes for me and 5 minutes for Casey and I'm also going to pick up the argument for John Myers. Your Honors, this case is not a close call. Judge Cooper got it right. And let me tell you really what this is about. This case is a litigation ploy by an experienced corporate defendant, Hamilton Materials, that's had 30 years of experience as a defendant in the asbestos wars. They fear their insurance coffers are running dry because of three decades of litigation and settlements. And to the question you raised, Judge Gould, the theory of this case is starting in 1978 when Hamilton was first sued and there are complaints that are in the record starting from 1978. It is alleged in this case that they are seeking recovery for all settlement amounts that they have paid. And we know that they first got sued in 1978. So this case is a case about trying to recover for past settlement amounts and also to try to recover for future settlement amounts. Now, what this case is really about is an attempt to now shift blame against Union Carbide. And the court has to know some very serious issues that have been raised by this litigation strategy because I really think it gives rise to a skepticism that this court should have of why we're here, and it was the same skepticism that I believe Judge Cooper had. The premise of this lawsuit is that a deposition of John Myers in 2003, where a Hamilton attorney was present, suddenly the light bulb went off, the eureka moment. Now, Judge Cooper actually took a look at that deposition of John Myers and found nothing supporting Hamilton's claim. That has not been described to this court. What was also presented to Judge Cooper was after the eureka moment in 2003, and remember what's brought us here is the claim by Hamilton that Union Carbide misrepresented and concealed health information and said that this calligery asbestos was safe when, in fact, Union Carbide knew that it wasn't. That's what the claim is about. But what was presented to Judge Cooper was expert reports provided by Hamilton to other states, courts in this state, where they told other judges the exact opposite, and that was 22 months after the eureka moment. So February 2003, at the deposition of John Myers, Hamilton finds out that there's a fraud. The fraud is that Union Carbide's asbestos really isn't as safe as they say it is. Twenty-two months later, they give expert reports to other courts where they tell other judges that the science supports the position that that asbestos is different and that it's safer. One month ago in another California court, Hamilton retained an expert witness who testified to the exact same position, a Dr. Hewson. I was just given that transcript. I think the court could take judicial notice of a public statement. I have a copy here with me. But what they're doing is telling two courts the exact opposite story. This court is now told it's a fraud. Other courts are told it's backed by good science. That can't be squared in any court, and it shouldn't be squared here. But it's also completely besides the point. If I listen to what was explained to the court, essentially what counsel for Hamilton has told the court is that there's no fraud here in the first place because there's scientific studies put out by independent parties, including the United States government, the Bureau of Mines in 1982, that in fact support the safety and the medical positions that are taken. But the issue before this court is statute of limitations. When should this claim even have been brought in the first place? And when you get to that question, we can ignore that Hamilton takes completely opposite positions and tells different judges the exact opposite story. But what we have to look- Counsel. Yes. If you could please, what do you think is the significance, if any, of the Grisham decision? Your Honor, those, that case is- I think he hasn't finished. Oh, I'm sorry. Had you finished your question, Judge Gould? Yes, except in the demise of Soleyman. Those cases, Your Honor, have very little to do with this, and let me explain why. Those cases are cases brought by individual smokers against the tobacco industry. And those cases are dealing with whether or not the tobacco industry can assert as a defense that those cases are poured out of court at the pleading stage. That is not what this case is about. The common knowledge defense is not what this case is about. This case is about a sophisticated plaintiff who is charged by law, not an individual smoker, but a corporate plaintiff who, under the law, is charged with knowledge of all of the scientific information that is out there that they know or should or could know with reasonable diligence. Those cases do not in any way alter the basic standard of when is somebody on inquiry notice. Every corporate plaintiff charged with that kind of knowledge- I'm sorry? Where is every corporate plaintiff charged with that kind of knowledge? The law in California, Your Honor, is that a corporate plaintiff who is manufacturing a product is supposed to be an expert in the product that they make. Okay. And an expert means that you've got to know what the science is, and you've got to go figure it out. So those cases reaffirm what the basic standard is for the discovery rule. They don't change that standard, but the factual context is very, very different. And they don't certainly suggest that a district court can't hear evidence and grant summary judgment on when a statute of limitations begins to run. What we have to appreciate here is that this isn't just about litigation. This is a field which has been regulated going back to the 1930s. And when you overlay the fact that Hamilton and Union Carbide have been sued together, when you overlay that asbestos has been regulated going back to the 1930s, when you look at the fact, and it was undisputed in this record, that in 1977, the product that Hamilton manufactured was banned by the United States government because it was unreasonably dangerous. Now, if it were true, and we assume for purposes of this, that let's say Union Carbide said to Hamilton in 1976, this is safe, your product isn't unreasonably dangerous. A year later, when the federal government bans the product as unreasonably dangerous, they are automatically on notice to look into whether or not any statement by Union Carbide is true. When you then roll forward and you realize in 1978 to date, they're sued in thousands of cases where Union Carbide is side by side, and the thrust of the lawsuit is that your product is unreasonably dangerous, the duty of both that client and the lawyer representing them is to investigate, is that true? And by the way, should I bring a claim against the person who sold it to me? There are obviously very, very experienced judges and lawyers who are here, and we know that when defendants are sometimes on the same side, they may make tactical choices not to go after another defendant. But that, when you make a tactical choice, you've got to live by that tactical choice. And that was a tactical call that was made. But back to the key question, is when should Hamilton have known? When Hamilton gets sued, they should have known. When their product gets banned, they should have known. And when you put on top of that the six volumes of information that was before the district judge, newspaper articles, medical articles, expert reports, that information is out there. And Hamilton knew or should have known all about it. The key question here is what is really the standard? And this, according to the California Supreme Court, is the question that we have to focus on. And it wasn't changed by Grisham, Soliman, or any of those cases. Plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury and are charged with knowledge of the information that would have been revealed by such investigation. The materials that have been put before the court show why Judge Cooper was right. Union Carbide has been sued in asbestos cases starting from the mid-1970s. And a repository of all the Union Carbide documents has been made available to lawyers and plaintiffs around the country. And we're talking about thousands of lawsuits. And Hamilton had access to all of those materials. And indeed, what was presented to the district court was a chapter in a book written by a lawyer who had access entirely to the internal documents of Union Carbide. The first edition was published in 1985. And that was shown to the district court. The documents that are outlined in the complaint in this case appeared in books in 1985. So the question is, what, with knowledge of the information, would have been revealed by an investigation? What would you have found? You would have found what every other plaintiff's lawyer found and have been suing Union Carbide with for the last 30 years. Their internal documents. That's what they would have found. And indeed, they did find them when they did an investigation. Because they're detailed in the pleading. And that's what they would have found. What we are really talking about is not whether or not Hamilton should have known. They've got actual knowledge. They've got actual knowledge because their product was banned in 1977. That's actual knowledge that somebody has said it's unreasonably dangerous. If thousands of plaintiffs sue Union Carbide and Hamilton over the last 30 years, alleging that exposure to Hamilton's product hurt them, and Union Carbide allegedly supplied the asbestos that went in there, shouldn't Hamilton have known to evaluate whether or not that's true? We're not here to decide whether or not Hamilton could prevail on that scientific debate. That's not the question. So when counsel said, well, there's a government study that says this, there's one that says that, I would tell this court that when Union Carbide tries cases, they do very, very well on these issues. But that's not the question. The question is, was there information there for them to find? Just like the other thousands of individual plaintiffs who don't have the level of sophistication, who are not charged by law with knowledge of all this. If all those thousands of people could be suing Union Carbide for 30 years, this corporate defendant certainly could. And when you pile on top of that the mountain of newspaper articles, scientific studies, Judge Cooper looked at that, and it wasn't a close call. Let me turn then to the last question, the procedural issue before the court. It was suggested that at the oral argument that was held Monday, January 31st, that new information was presented to Judge Cooper. Let me make sure the court knows exactly procedurally what happened here. This would involve two motions, a motion to remand and a motion to dismiss. Those motions were heard at the same time. The reason was they involved the same issue, whether or not the claims were time barred. So the district judge said, exact same issue on the motion to dismiss and the motion to remand. Let's hear it all together. Prior to that motion, because a motion to remand is an evidentiary determination, both sides leading up to that motion submitted a mountain of evidence that became a seven-volume record. At that hearing, in response to the tentative ruling of the court, I presented additional evidence. I showed the judge the chapter in the book, and I showed the judge some science on collidery asbestos. The judge then turned to Counsel for Hamilton, who made the argument before the district court, and said, would you like more time to respond to what Mr. Bix has brought before the court? And the question from the judge was, how much time do you need? And the lawyer told Judge Cooper, I would like one more week. After that week, another stack of internal documents, deposition testimony of John Myers, the man who supposedly prompted the Eureka moment, deposition testimony going back to the mid-'80s, was handed up to the judge. Your Honor, Judge Ferris, you ruled in the Rothery case that the question is, did the parties have a full and fair opportunity to ventilate the issues? And when you look at the record before the district court, there was more than a full and fair opportunity. And for Hamilton to suggest that they needed to discover something else doesn't make any sense. The case against Union Carbide has been discovered for 30 years, and that case has been written in books, and it's all over for the world to see. That concludes my time. I would like to thank the court. It was a great honor for me to be admitted here to appear before you today. On behalf of Union Carbide, I would respectfully request that the court affirm Judge Cooper's decision. Thank you. Thank you, Mr. Bix. May it please the Court. Anthony Benevenia for Appley, KCAC, Inc. KCAC joins in the argument of Union Carbide and submits that the statute of limitations has passed on the fraud claim. There is an additional independent reason why Judge Cooper's ruling should be upheld with respect to KCAC. And to be blunt, there is no fraud claim against KCAC. KCAC is only in this case as an alleged successor of liability to Union Carbide, having fought the King City operation in 1985. However, this record does not support any possible finding that KCAC assumed the liability for Hamilton Materials' fraud claim against it. I did something on the State court, and I'm reluctant to do it here, but I think I'm inclined to do it here. This case has been well briefed, hasn't it? Yes, Your Honor. Is there any point you need to make that we don't already know? I'll be very brief, Your Honor. The reply brief of appellants argues that the asset agreement provides that we did, in fact, assume the liability for such a fraud claim, but such a fraud claim is not expressed in the asset agreement. And we had a declaration from our client, Mr. Cleaver, who said, since the intent of the contract is paramount in any possible ambiguity under this contract, that says there was no intent to assume Hamilton Materials' claim. And it was that declaration which was not objected to by the appellant, and there was no countervailing argument. And so, Your Honor, given your comment and your admonition, I will submit the matter, and I appreciate the opportunity. I'm not rushing you, Pastor. You've only got a small amount of time. But your point's pretty well made in the papers that are before us. And if Your Honors have any questions about the positions taken in the briefs and my rebuttal to the reply of the appellant in this case, the matter is submitted, and I appreciate the opportunity to present this argument. Thank you, Ken. Thank you. Thank you, Your Honors. For 30 years, for 30 years, Union Carbide kept a secret. And that secret was a secret. Open secret. No, it was not an open secret, Judge. And that's the important point. It was not an open secret. What we didn't know for 30 years was that Union Carbide had lied to us, that all those years when we thought it was on our side, fighting the good fight, Caligari is safe, Caligari is safe, expert opinions, Caligari is safe, it knew better. It knew better. And we didn't know that. We didn't know that it had evidence it had suppressed in the 70s that Caligari was dangerous, in the 70s. That when its employee, John Myers, was telling us it was safe, that he wouldn't mind if his grandchildren breathed Caligari, that he knew better. Okay? For 30 years, they kept that secret. What you won't find in this record, what you won't find is that there was any evidence, any common knowledge, that Union Carbide knew that its statements about Caligari were untrue during those 30 years. Okay? The documents were available, he says. Okay? There's a repository. Well, you will find nothing in the record in this case about a repository of documents. There actually is one. It's a gymnasium. It would take somebody years to go through that repository and find anything meaningful. Years. What you won't find in this record is that Hamilton Materials is a sophisticated corporate plaintiff. It's not. Are they charged under California law with expert knowledge of what they're putting out? Yes, Your Honor. I don't come from California. They're charged. And so what they're charged with, knowledge of, is they're charged with knowledge of the fact that there was a scientific debate. That's not what they're charged with. They're charged with expert knowledge. Isn't that correct? Well, a debate. They're charged. Well, Your Honor, if the experts disagree, if the experts disagree, then all they're charged with is knowledge of the fact that the experts disagree. What they're not charged with knowledge of is knowledge that Union Carbide knew better. And that's what this case is about. I think we understand your point. Go ahead. If you have something more you want to tell us, put the records here and we can review them. What you won't find in this record is that they're a sophisticated corporate plaintiff. Hamilton Materials is a privately held company. It's solely owned by Willis Hamilton, who started this company in his garage in 1959. Okay? What you won't find in this record is that the deposition of John Myers in 2003 was a eureka moment in which we discovered the fraud. That's not what's alleged. What's alleged is that we learned some things there that caused us to begin investigating, and that through that further investigation over time, we discovered that Union Carbide had lied to us. Those are the issues that must be submitted to a jury, that must be submitted to a trier of fact to determine, as stated in Grisham II, at what point in time did reliance upon Union Carbide's misrepresentations become unreasonable? At what time, point in time should we have known, not that Union Carbide was with us in the fight, but that they had lied to us and they'd been lying to us for decades? I will finish, Your Honors, with this. The question here is whether reasonable minds can differ. And what Judge Cooper did in this case is she took this away from a jury. She took this issue of fact. That's quite complicated. Okay? And she took the volumes of materials, experts and so forth, and without any evidence, decided that Hamilton Materials should be charged with knowledge of all of it. What she did is she applied an inquiry to a notice test that, once again, counsel has repeated up here again today. We were under, you know, once we started getting sued, we were under obligation to exercise reasonable diligence. That's not the test. That's a test for the discovery rule. The question is whether the statute of limitations is run. You say it hasn't. They say it has, and we're going to have to decide it. What else do you need to tell us? That's it, Your Honor. That's it. Thank you very much. I appreciate the question. Okay. Case just audited and submitted. The court for this session stands adjourned.
judges: Farris, Gould, Cff, Duffy